**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| | : | |
| RASHEED F. MUHAMMAD, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 05-0296 (JAG) |
| | : | |
| v. | : | |
| | : | |
| ATTORNEY GENERAL OF THE STATE | : | **O P I N I O N** |
| OF NEW JERSEY and RONALD | : | |
| CATHEL, | : | |
| | : | |
| Respondents. | : | |
| | : | |

---

**APPEARANCES:**

> RASHEED F. MUHAMMAD, #224002B
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey  08625
> Petitioner pro se

> JOAN E. LOVE, Assistant Prosecutor
> PAULA T. DOW, ESSEX COUNTY PROSECUTOR
> Essex County Courts Building
> Newark, New Jersey  07102
> Attorneys for Respondents

**GREENAWAY, JR.**, District Judge

Rasheed F. Muhammad filed a Petition seeking the issuance of a Writ of Habeas Corpus,

pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction in the Superior Court of

New Jersey.  Respondents filed an Answer, arguing that the Petition should be dismissed on the

merits.  Petitioner filed a letter in response to the Answer.  For the reasons expressed below, this

Court shall dismiss the Petition with prejudice and shall decline to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction filed on February 11, 1998, in the Superior Court of New Jersey, Law Division, Essex County, after a jury convicted him of the knowing and purposeful murder of an eight-year old girl, two counts of aggravated sexual assault of a victim under age 13, kidnapping, and felony murder.  Petitioner received a sentence of life with no eligibility for parole, and a consecutive 50-year sentence.  Petitioner appealed.  On November 17, 1999, the Appellate Division of the Superior Court of New Jersey affirmed.  See State v. Muhammad, Docket No. A-5612-97T2 slip op. (N.J. Super., App. Div., Nov. 17, 1999).  On February 29, 2000, the New Jersey Supreme Court denied certification.  See State v. Muhammad, 163 N.J. 80 (2000) (table).

On September 13, 2000, Petitioner executed a pro se state petition for post-conviction relief, which he filed in the Law Division.  In an opinion and order filed April 3, 2003, the Law Division denied relief without an evidentiary hearing.  Petitioner appealed, and in an opinion filed June 10, 2004, the Appellate Division affirmed the order denying post-conviction relief. See State v. Muhammad, No. A-4868-02T4 slip op. (N.J. Super., App. Div., June 10, 2004).  The New Jersey Supreme Court denied certification on October 14, 2004.  See State v. Muhammad, 182 N.J. 141 (2004)  (table).

Petitioner executed and filed the Petition which is now before this Court on January 9, 2005.  The Clerk received it on January 14, 2005.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act

("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive

Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  By letter filed December

16, 2005, Petitioner asked this Court to rule on his Petition "as is." [1]

The Petition presents four grounds, which are set forth below verbatim:

> Ground One:  DEFENDANT WAS DENIED THE EFFECTIVE
> ASSISTANCE OF COUNSEL.
>
> Supporting FACTS:  Defense counsel should have used an expert
> child psychologist to prove that the identification of the defendant
> was impermissibly suggestive.  Defense counsel should have used
> an expert to challenge the findings of the medical examiner and
> Linda Jankowski.
>
> Ground Two:  THE DEFENDANT WAS DENIED THE
> EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.
>
> Supporting FACTS:  Defendant argues that appellate counsel's
> performance was objectively unreasonable because a review of the
> record in this matter would have disclosed the points raised in the
> petition for post-conviction relief.  Defendant was denied an
> evidentiary hearing to present his claims that appellate counsel was
> ineffective.

---

[1] By letter to this Court received on May 15, 2006, Petitioner asks if he "will be able to try again if [he] do[es] not do it right this time?  [I]f so[, he] would like to make sure everything is properly in order before [he] move[s] on."  (Letter from Petitioner, received May 15, 2006.) As stated in this Court's Order filed December 7, 2005, prisoners challenging the legality of their detention, pursuant to the judgment of a state court, must include in one § 2254 petition all the arguments they have to collaterally attack the state judgment and, except in extremely limited circumstances, file this one all-inclusive petition within one year of the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review.  See 28 U.S.C. § 2244(d); Mayle v. Felix, 545 U.S. 644, __, 125 S. Ct. 2562, 2566 (2005) (one-year statute of limitations prohibits amendment of § 2254 petition after expiration of limitations period to add "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth"); United States v. Duffus, 174 F.3d 333, 338 (3d Cir. 1999) ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period.").

Ground Three:  DEFENDANT'S WRITTEN CONFESSION
SHOULD HAVE BEEN SUPPRESSED BECAUSE THE POLICE
DID NOT SCRUPULOUSLY HONOR THE DEFENDANT'S
ASSERTION TO REMAIN SILENT AFTER HE STATED THAT
HE WOULD NOT SUBMIT TO A POLYGRAPH TEST
WITHOUT COUNSEL.

Supporting FACTS:  Because the right to counsel is so
fundamental, an equivocal request for an attorney is to be
interpreted in a light most favorable to the defendant.  When a
suspect makes a statement that arguably amounts to an assertion of
miranda rights and the interrogating officer recognizes that the
statement is susceptible to that construction, questioning [should
cease].

Ground Four:  DEFENDANT'S MOTION FOR A MISTRIAL
AFTER THE PROSECUTOR'S SUMMATION SHOULD HAVE
BEEN GRANTED BECAUSE THE PROSECUTOR REFERRED
TO THE DEFENDANT AS A CHILD MOLESTER DURING HIS
SUMMATION.

Supporting FACTS:  The statement by the prosecutor that
defendant was a child molester was prejudicial and left the jury
with the impression that the defendant was a bad person.  It is a
perception which clearly cast the defendant in a bad light before
the jury there was no basis for this remark because the defendant
had never been charged or convicted of being a child molester.

(Pet. ¶ 12.A., 12.B., 12.C.)

The State filed an Answer, arguing that the Petition should be dismissed on the merits.

Petitioner filed letters to this Court on May 15, 2006.  See supra note 1.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives this Court jurisdiction to

entertain a habeas petition challenging a state conviction or sentence only where the inmate's

custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas
> corpus in behalf of a person in custody pursuant to the judgment of
> a State court only on the ground that he is in custody in violation of
> the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

A district court must give deference to determinations of state courts. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361, 368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits"[2] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a

---

[2] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

[different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Ineffective Assistance of Trial Counsel

In Ground One, Petitioner argues that trial counsel was constitutionally ineffective in failing to retain experts to establish that a nine-year old child's identification of Petitioner was impermissibly suggestive and to rebut the testimony of the state's DNA expert.

The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Id. at 687.

6

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id. Second, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In this case, Petitioner presented his ineffective assistance of counsel claims on post-conviction review. The Appellate Division rejected them with the following comments:

> After reviewing the record in light of defendant's arguments and the pertinent law, we agree with Judge Volkert and affirm substantially for the reasons stated in his comprehensive April 3, 2003 written decision. Defendant has shown neither that counsel's assistance was deficient nor that the result would have been different had counsel provided the type of assistance defendant now details. Strickland v. Washington, 466 U.S. 668, 694 . . . . We conclude, as did Judge Volkert, that defendant had the assistance of competent counsel at trial and on appeal . . ., and that no evidentiary hearing was required to reject defendant's PCR petition. . . . We add only the following brief observations.
>
> The State's DNA expert testified that she was "not able to eliminate, basically, anybody as the source of the DNA from the sperm because [she] believe[d] that [she] did not get enough DNA or any DNA from the sperm itself." She testified unequivocally that neither the blood found on the vaginal smear nor the sperm found on an anal slide matched the DNA characteristics of defendant's blood. Defendant's argument that a defense retained DNA expert could have provided testimony that would have been more beneficial to defendant is pure speculation.

Regarding the young witness, as Judge Volkert pointed out, the "witness had watched defendant take the victim by the hand and walk upstairs.  The witness was not only familiar with defendant but had ample opportunity to observe the defendant and was attentive to both the defendant's presence and appearance." Therefore, as Judge Volkert astutely recognized, "defense counsel's strategic decision not to seek to introduce a child psychologist was likely based on the witness's prior knowledge of the defendant, her extremely accurate identification of him and other reliable facts surrounding the identification."

While denying defendant's PCR petition, the judge concluded that "[defendant's] conviction resulted from the overwhelming evidence of guilt presented at trial, including the identification of defendant.  Simply put, [defendant's] conviction was not due to any deficiency in defense counsel's performance."  We agree.

State v. Muhammad, No. A-4868-02T4 slip op. at pp. 2-4 (App. Div. June 10, 2004).

Judge Volkert, the trial judge, rejected Petitioner's claim that counsel was ineffective for failing to retain a child psychologist to show that the child's identification of Petitioner was impermissibly suggestive as follows:

Specifically, the court was persuaded by the fact that on several occasions prior to April 1, 1995, the witness testified that she had seen defendant in and around the building, in fact, she knew his name.  Furthermore, the witness provided the police with an extremely accurate specific description of the defendant, as a 5'9" black male, dressed in a black shirt, black pants, black boots, and a black "puff" coat who wore a black hat with a red and white pin. In addition, the court found no discernable discrepancies between the description of the defendant by the witness and the defendant's actual appearance.  In fact, the police recovered articles of clothing from defendant's apartment that matched the description given by the witness.

Furthermore, at the time Officer Easter escorted the witness upstairs to see if she could identify defendant, the officer himself did not yet know that the body of the victim had been discovered . . . . The witness had watched defendant take the victim by the hand and walk her upstairs.  The witness was not only familiar with

8

defendant but had ample opportunity to observe the defendant and was attentive to both the defendant's presence and appearance.

Accordingly, the court noted in its opinion that it would strain credulity to find a suggestive environment for identification purposes, because that which is already known is incapable of being suggested for the first time. Thus, defense counsel's strategic decision not to seek to introduce a child psychologist was likely based on the witness's prior knowledge of the defendant, her extremely accurate identification of him and other reliable facts surrounding the identification.

State v. Muhammad, Ind. #2285-6-95 letter opinion at pp. 8-9 (N.J. Super., Law Div., April 3, 2003).

Judge Volkert rejected Petitioner's claim that counsel was ineffective for failing to retain a DNA expert to rebut the medical testimony as follows:

Specifically, petitioner argues that counsel failed to properly explore aspects of the testimony of the state's witness, medical examiner Linda Jankowski. Ms. Jankowski performed DNA analysis and compared specimens taken from the petitioner to oral, vaginal and anal swabs taken from the victim. Petitioner contends that it was an error for defense counsel not to have employed an expert to challenge and rebut Ms. Jankowski's testimony and that, upon testing these samples, she could not exclude the defendant as the perpetrator of the crime . . . .

[D]efense counsel adduced testimony from the medical examiner that the defendant was not matched as the contributor of the DNA and that based on the DNA evidence, no man could be excluded as the perpetrator of the crime. Essentially, defense counsel, through cross-examination, brought to light the exact discrepancies and controversies contained in Ms. Jankowski's testimony that petitioner now asserts required an expert to expose. Furthermore, as a result of skillful cross-examination the jury learned that Mr. Muhammad did not match the DNA sample examined by Ms. Jankowski. It would appear to be counterproductive to then contradict that type of helpful testimony with an expert challenging Ms. Jankowski's findings and similar testimony would have served no useful purpose.

Id. at pp. 9-10.

This Court has carefully reviewed the record on post-conviction review regarding Petitioner's ineffective assistance of counsel claims.  Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims because he has not shown that the adjudication of the claims by the New Jersey courts resulted in a decision that was contrary to, or involved an unreasonable application of, Strickland or other Supreme Court jurisprudence.

B.  Ineffective Assistance of Appellate Counsel

In Ground Two, Petitioner claims that appellate counsel was constitutionally ineffective for failing to raise "the points raised in this petition for post-conviction relief."  (Pet. ¶ 12.B.)

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, Evitts, 469 U.S. at 396.  The ineffective assistance of counsel standard of Strickland, 466 U.S. at 686, applies to a claim that appellate counsel was ineffective.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

Defense counsel has a constitutionally imposed duty to consult with the defendant about whether to appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  The term "'consult' convey[s] a specific

10

meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  Flores-Ortega at 478.

In this case, Petitioner contends that counsel on direct appeal was ineffective in failing to raise on direct appeal the claims presented on post-conviction relief.  However, the failure of counsel on direct appeal to argue the ineffectiveness of trial counsel did not constitute deficient performance, as Petitioner was permitted to present his ineffective assistance of trial counsel claims on post-conviction relief.  See Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999) (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).  Under these circumstances, Petitioner cannot show that the adjudication of his ineffective assistance of appellate counsel claim was contrary to, or involved an unreasonable application of, Strickland and its progeny.

C.  Self-Incrimination

In Ground Three, Petitioner claims that his "written confession should have been suppressed because the police did not scrupulously honor the defendant's assertion to remain silent after he stated that he would not submit to a polygraph test without counsel."  (Pet. ¶ 12.C.)

The Fifth Amendment provides, in part, that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The Fourteenth Amendment incorporates the Fifth Amendment privilege against self-incrimination.  See Malloy v. Hogan, 378 U.S. 1, 8 (1964).  In Miranda v. Arizona, 384 U.S. 436 (1966), the Court held that "without proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him

11

to speak where he would not otherwise do so freely."  384 U.S. at 467.   When police ask

questions of a suspect in custody without administering the required warnings, <u>Miranda</u> dictates

that the answers received be presumed compelled and that they be excluded from evidence at

trial in the State's case in chief.  <u>See</u> <u>Oregon v. Elstad</u>, 470 U.S. 298, 317 (1985).  Thus, a

confession taken during a custodial interrogation without the provision of <u>Miranda</u> warnings

violates the privilege against self-incrimination.  <u>See</u> <u>Thompson v. Keohane</u>, 516 U.S. 99 (1995).

"To safeguard the uncounseled individual's Fifth Amendment privilege against self-

incrimination, the <u>Miranda</u> Court held, suspects interrogated while in police custody must be told

that they have a right to remain silent, that anything they say may be used against them in court,

and that they are entitled to the presence of an attorney, either retained or appointed, at the

interrogation."  <u>Thompson</u>, 516 U.S. at 107; <u>see also</u> <u>Miranda</u>, 384 U.S. at 479.

   The <u>Miranda</u> Court also outlined the procedures to be followed after the police provide

the warnings.  If the accused requests counsel, "the interrogation must cease until an attorney is

present."  <u>Miranda</u>, 384 U.S. at 474.[3]  "<i>Miranda</i> thus declared that an accused has a Fifth and

Fourteenth Amendment right to have counsel present during custodial interrogation."  <u>Edwards</u>

<u>v. Arizona</u>, 451 U.S. 477, 481 (1981).

   Once the accused has invoked the right to counsel, the accused may thereafter waive the

right to counsel, provided the waiver "constitute[s] a knowing and intelligent relinquishment or

---

   [3] <u>Compare</u> <u>Davis v. United States</u>, 512 U.S. 452, 461 (1994) (holding that police were not
required to stop questioning suspect after he remarked, "Maybe I should talk to a lawyer"
because, "after a knowing and voluntary waiver of the <u>Miranda</u> rights, law enforcement officers
may continue questioning until and unless the suspect clearly requests an attorney") <u>with</u> <u>Oregon
v. Bradshaw</u>, 462 U.S. 1039, 1041-41 (1983) ("I do want an attorney before it goes very much
further"); <u>Edwards</u>, 451 U.S. at 479 ("I want an attorney before making a deal").

abandonment of a known right or privilege, a matter which depends in each case 'upon the

particular facts and circumstances surrounding that case, including the background, experience,

and conduct of the accused.'"   Id. at 482 (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

Specifically, the Supreme Court ruled in Edwards that:

> when an accused has invoked his right to have counsel present
> during custodial interrogation, a valid waiver of that right cannot
> be established by showing only that he responded to further police-
> initiated custodial interrogation even if he has been advised of his
> rights.  We further hold that an accused, such as Edwards, having
> expressed his desire to deal with the police only through counsel, is
> not subject to further interrogation by the authorities until counsel
> has been made available to him, unless the accused himself
> initiates further communication, exchanges, or conversations with
> the police . . . .
>
> [W]e do not hold or imply that Edwards was powerless to
> countermand his election or that the authorities could in no event
> use any incriminating statements made by Edwards prior to his
> having access to counsel.  Had Edwards initiated the meeting on
> January 20, nothing in the Fifth and Fourteenth Amendments
> would prohibit the police from merely listening to his voluntary,
> volunteered statements and using them against him at the trial.
> The Fifth Amendment right identified in *Miranda* is the right to
> have counsel present at any custodial interrogation.  Absent such
> interrogation, there would have been no infringement of the right
> that Edwards invoked and there would be no occasion to determine
> whether there had been a valid waiver.

Edwards, 451 U.S. at 484-86 (footnotes omitted); see also Smith v. Illinois, 469 U.S. 91, 95

(1984) (rule announced in Edwards requires a finding that the suspect "(a) initiated further

discussions with the police, and (b) knowingly and intelligently waived the right he had

invoked").

　　　　The Supreme Court thereafter ruled in Connecticut v. Barrett, 479 U.S. 523 (1987), that

the police may continue to interrogate a suspect who has made only a limited request for counsel,

provided the suspect is willing to continue to talk to police without counsel.  In that case, Barrett

told the officers during a custodial interrogation that he "was willing to talk about [the incident]

verbally but he did not want to put anything in writing until his attorney came,"  Barrett, 479 U.S.

at 526.  The Supreme Court held that the admission of Barrett's subsequent verbal confession did

not violate the Fifth Amendment or Miranda because the confession was not in writing.  As the

Supreme Court explained:

> It is undisputed that Barrett desired the presence of counsel before
> making a written statement.  Had the police obtained such a
> statement without meeting the waiver standards of *Edwards*, it
> would clearly be inadmissible.  Barrett's limited requests for
> counsel, however, were accompanied by affirmative
> announcements of his willingness to speak with the authorities.
> The fact that officials took the opportunity provided by Barrett to
> obtain an oral confession is quite consistent with the Fifth
> Amendment.  *Miranda* gives the defendant a right to choose
> between speech and silence, and Barrett chose to speak . . . .  Here .
> . . Barrett made clear his intentions, and they were honored by
> police.  To conclude that respondent invoked his right to counsel
> for all purposes requires not a broad interpretation of an ambiguous
> statement, but a disregard of the ordinary meaning of respondent's
> statement . . . .  We also reject the contention that the distinction
> drawn by Barrett between oral and written statements indicates an
> understanding of the consequences so incomplete that we should
> deem his limited invocation of the right to counsel effective for all
> purposes.

Barrett, 479 U.S. at 529-30 (footnotes omitted).

In this case, Petitioner argues that the admission of his confession violated his

constitutional rights because the police continued to interrogate him after he invoked his right to

counsel for the purpose of taking a polygraph test.  The Appellate Division "affirm[ed]

substantially for the reasons expressed by Judge Volkert in his written opinion dated September

23, 1997." <u>State v. Muhammad</u>, Docket No. A-5612-97T2 slip op. at p. 8 (N.J. Super., App.

Div., Nov. 17, 1999). Judge Volkert found the following facts in regard to this claim:

> [After reading the <u>Miranda</u> warnings for the third time,] Detective Garcia asked defendant a series of substantive questions to which defendant responded. Detective Garcia typed defendant's written statement at the same time that these questions were asked and answered. Near the end of this interrogation, defendant stated that he would not submit to a polygraph examination without counsel. Immediately thereafter, defendant proofread his typed statement, initialed each of his hand-written corrections, and signed the document . . . . At the conclusion of this interview, Detective Garcia and Lieutenant Arnold discussed several inconsistencies concerning defendant's statement . . . Lieutenant Arnold questioned defendant regarding these inconsistencies and indicated to defendant that he did not believe that defendant had answered their questions truthfully.
>
> During this conversation, defendant and Lieutenant Arnold had a short discussion about the fundamentals of their shared religion, Islam. Lieutenant Arnold reminded defendant that all Muslims are judged in the "hereafter." After this discussion, defendant orally affirmed his first written statement in which he denied any involvement in the death of Jakiyah McClain.
>
> During this brief discussion, Lieutenant Arnold also asked defendant if he was cold or uncomfortable. Defendant complained that he was cold. Lieutenant Arnold made arrangements to provide defendant with some additional clothing. Before Lieutenant Arnold left headquarters to pick-up the clothing, defendant was returned to the holding cell and remained there until Lieutenant Arnold returned.
>
> Approximately twenty-five minutes later, Lieutenant Arnold returned and provided defendant with a pair of sweat pants and a sweat shirt. At the same time that defendant was provided with the sweat suit, defendant was given something to eat by Lieutenant Arnold . . . . While they ate outside of the holding cell, defendant asked Lieutenant Arnold what would happen to him if he were involved in, or had knowledge of, Jakiyah's death. Lieutenant Arnold informed defendant that if he had killed Jakiyah then he would be charged with her homicide. Notwithstanding his

> understanding of these consequences, defendant proceeded to volunteer information regarding his involvement in Jakiyah's death.
>
> Before defendant was permitted to proceed any further, Lieutenant Arnold interrupted defendant and asked him if he would agree to provide a second written statement. Defendant agreed and was read the <u>Miranda</u> warnings once again . . . . At 4:10 p.m., defendant read and signed a second waiver form. Without compulsion, defendant memorialized his second sworn statement in which he admitted to raping, sodomizing, and causing the death of Jakiyah McClain.

<u>State v. Muhammad</u>, Ind. #2285-6-95 slip op. at pp. 5-7 (N.J. Super., App. Div., Sept. 23, 1997).

In considering Petitioner's claim, Judge Volkert cited <u>Edwards</u> and <u>Barrett</u>, and stated that, "[w]here an unambiguous, but limited, request for counsel is made by defendant, the court must be convinced that the law enforcement officers 'scrupulously honored' defendant's right to the extent of the invocation . . . . However, statements made outside the scope of that invocation will be admissible provided that the State meets its burden with regard to waiver." <u>Id.</u> at pp. 8-9. Judge Volkert rejected Petitioner's claim as follows:

> Based upon consideration of all of the testimony, the court finds that defendant made a limited request for counsel in response to a specific question which was posed by Detective Garcia at the very end of his [first] interrogation. Defendant's limited request was unambiguous and responsive in nature. When asked by the detective, "Are you willing to take a lie detector test?" defendant responded, "Yeah, under counsel, yeah." Defendant's response, as understood by the ordinary hearer, in this case Detective Garcia and Lieutenant Arnold, contained no ambiguity and required no interpretation. Lieutenant Arnold's testimony on cross examination supports this conclusion . . . . According to Detective Garcia's testimony, there was no intention to have defendant submit to a polygraph examination . Rather, the detective routinely asks this question to gauge the witness' reaction. Nonetheless, it is undisputed that defendant would have desired the presence of counsel before the administration of a polygraph examination. Had

the police conducted such a test without first meeting the strict reinitiation rule of Edwards v. Arizona, 451 U.S. 477 (1981), the results of that test would have been inadmissible.  Here, as in Barrett, to conclude that defendant invoked his right to counsel for all purposes requires, not a broad interpretation of an ambiguous statement, but a disregard of the plain language of defendant's response.  Whatever reason defendant had for making this response, it is clear to this court . . . that it did not involve ignorance of his rights.

   As in . . . Barrett, Defendant Muhammad's limited request for counsel was accompanied by certain contemporaneous acts.  These affirmative acts are highly illustrative of defendant's unmistakable willingness to continue the interview process without the assistance of counsel.  Specifically, defendant swore that his entire written statement was truthful; defendant carefully proofread his statement; defendant made handwritten corrections to the typed statement; defendant initialed each correction with the letters "RM"; and defendant signed the written statement immediately after these acts.  Significantly, defendant affirmed the veracity of his statements and performed all of these acts contemporaneous with his response to the detective's question regarding the polygraph.  Defendant never mentioned counsel again.

   To interpret defendant's statement that he would be willing to take a lie detector test with counsel as an invocation of the Edwards prohibition defies a logical interpretation of what was spoken and what was done.

Id. at pp. 10-12.

   This Court finds that the adjudication of Ground Three by the New Jersey courts was not contrary to, or an unreasonable application of, Edwards, Barrett, or other Supreme Court precedent.  See 28 U.S.C. § 2254(d)(1).  Petitioner is accordingly not entitled to habeas relief on Ground Three.

D.  Denial of Mistrial

In Ground Four, Petitioner argues that the trial court improperly denied his motion for a

mistrial, which motion was based on the prosecutor's reference to Petitioner as a "child

molester" during summation.  As factual support, Petitioner asserts that the statement "by the

prosecutor that defendant was a child molester was prejudicial and left the jury with the

impression that the defendant was a bad person.  It is a perception which clearly cast the

defendant in a bad light before the jury and there was no basis for this remark because the

defendant had never been charged or convicted of being a child molester."  (Pet. ¶ 12.D.)

Petitioner does not assert violation of his constitutional rights in Ground Three and, "[i]n

conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68

(1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159

(3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and

may intervene only to correct wrongs of constitutional dimension."  Smith v. Phillips, 455 U.S.

209, 221 (1982).  "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply

inapplicable."  Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

Moreover, in reviewing a § 2254 petition, a federal court is not permitted to address a

federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the

claim as a ground for relief.[4]  Nor may the Court recharacterize a ground asserted under state law

_____

[4] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition
raised claim that the police had elicited petitioner's statements without satisfying Miranda, the
district court erred when it "went beyond the habeas petition and found the statements
[petitioner] made after receiving the Miranda warnings to be involuntary under due process
(continued...)

18

as a federal constitutional claim.[5]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  And "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citation omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

Because Petitioner does not assert that the denial of a mistrial or the prosecutor's reference to Petitioner as a child molester during summation violated his constitutional rights, this Court lacks jurisdiction over the claim, and habeas relief on Ground Four is not permitted.

E.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

---

[4](...continued)
criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to  consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[5] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

## **IV.  CONCLUSION**

Based on the foregoing, this Court dismisses the Petition, with prejudice, and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


DATED: February 21, 2007


                                    S/Joseph A. Greenaway, Jr.
                                    JOSEPH A. GREENAWAY, JR., U.S.D.J.